J-S05029-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.D.T.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2471 EDA 2024 |

Appeal from the Decree Entered August 20, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000240-2023

BEFORE:   BOWES, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED FEBRUARY 21, 2025**

L.W. (Mother) appeals from the decree granting the petition filed by the Philadelphia Department of Human Services (DHS), and involuntarily terminating Mother's parental rights to R.D.T.F. (a son born in May 2019) (Child).[1]  Upon careful review, we affirm.

The trial court summarized the relevant factual history underlying this appeal:

> This family initially became known to [DHS in February] 2021. There was a General Protective Services ("GPS") report that the family… [was] residing in a house that was not suitable for [Child

---

[*] Former Justice specially assigned to the Superior Court.

[1] Child's father, T.F., was shot and killed in November 2019.  **See** N.T., 8/20/24, at 12-13; Order Verifying Deceased Status of a Parent, 8/20/24, Exhibit B (death certificate).

or Child's sibling, A.F. (children)].[2] The Community Umbrella Agency ("CUA") worker assigned[3] to the family began services for the family on March 1, 202[1]. By the time CUA began implementing services, Mother and children were living in a halfway house. On April 22, 202[1, M]other returned to the halfway house intoxicated and was verbally aggressive …. DHS subsequently obtained an Order for Protective Custody ("OPC") for [Child,] … and placed [Child] in the care of DHS. Since that incident, [Child] has remained in DHS['s] care.[4]

After [Child] came into DHS['s] care, DHS created Single Case Plan ("SCP") objectives for [M]other in order to achieve reunification with [Child]. Mother's SCP's are as follows: (1) attending parenting classes at the Achieving Reunification Center ("ARC"); (2) maintain employment and show proof thereof to the assigned CUA worker; (3) submit to a home assessment/maintain stable and suitable housing; (4) submit to random drug screens; (5) attend court; (6) attend visits with [Child] as ordered; and (7) attend a dual diagnosis assessment for mental health and substance abuse.

Trial Court Opinion, 11/19/24, at 1-2 (footnotes in original omitted; three footnotes added).

On September 20, 2021, the trial court[5] adjudicated Child dependent, and ordered Mother to complete the above-described SCP objectives. The

_____

[2] DHS averred in its Termination of Parental Rights (TPR) petition that A.F. "was reunified with his father, [H.R.], on September 24, 2021, and [A.F.'s] dependen[cy] matter was discharged on September 30, 2021." TPR Petition, 6/30/23, at 20.

[3] The record does not disclose the identity of the caseworker initially assigned to the family.

[4] In November 2021, DHS ultimately placed Child with his maternal cousin (foster mother). N.T., 8/20/24, at 13.

[5] The Honorable Daine Grey, Jr., presided over both the dependency and termination proceedings.

order permitted Mother supervised visitation with Child. The trial court held permanency review hearings in December 2021; March, May, and August 2022; and April 2023. The trial court consistently found that DHS and CUA made reasonable efforts to finalize Child's permanency plan. The trial court also repeatedly referred Mother to ARC and the Clinical Evaluation Unit (CEU) to complete court-ordered mental health/drug and alcohol evaluations, and to obtain parenting/housing services.

On June 30, 2023, DHS filed a TPR petition pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). DHS alleged that Mother "has failed to achieve full and continuous compliance with the established [SCP] objectives to facilitate reunification with [C]hild. [Mother] has also failed to consistently visit, plan for, and provide for [C]hild throughout [Child's] placement." TPR Petition, 6/30/23, at 7.

After numerous continuances, the matter proceeded to a hearing on August 20, 2024. Mother appeared, represented by counsel. Child was not present, but was represented by legal counsel and a guardian *ad litem* (GAL). DHS presented the testimony of CUA casework supervisor Kendal Brabham (Mr. Brabham). Mother testified on her own behalf.

Mr. Brabham testified that the family came to DHS's attention in 2021, and he began supervising the family in November 2022. N.T., 8/20/24, at 7. Mr. Brabham explained that DHS verified a report that Mother's residence was "not suitable for [Child] to live in[,]" and implemented services in the home.

*Id.* Mr. Brabham testified that DHS obtained an OPC for Child after it received a report that Mother, who was residing with children in a "halfway shelter," "returned back to the shelter intoxicated and was verbally aggressive toward [Child], and [Mother] was physically and verbally aggressive toward [A.F.]" *Id.* at 8.

Mr. Brabham testified that Mother's court-ordered objectives included 1) "[a]ttend[ing] parenting classes at the ARC"; 2) "maintain[ing] employment"; 3) "show[ing] proof of employment to CUA"; 4) obtaining a home assessment; 5) submitting to random drug screens; and 6) attending a mental health/drug and alcohol assessment. *Id.* at 8. With the exceptions of obtaining appropriate housing and consistently attending visits with Child, Mr. Brabham testified that Mother had failed to complete her SCP objectives. *See id.* at 9-14.

Concerning Mother's drug and alcohol treatment goal, Mr. Brabham testified that Mother consistently tested positive for marijuana and benzodiazepine. *Id.* at 10; *see also id.* at 10, 19 (Mr. Brabham testifying that Mother did not provide him with evidence that she possessed a medical marijuana license or a prescription for benzodiazepine); DHS Exhibit 2 (Mother's drug screens) (showing that Mother tested positive for benzodiazepine on eight of her drug screens, and for marijuana on all 17 of her drug screens). Mr. Brabham testified that Mother failed to get a dual

mental health/drug and alcohol diagnosis assessment at the CEU throughout the life of the case. *Id.*

Mr. Brabham further testified that Mother failed to 1) engage in any mental health treatment; 2) complete parenting classes through the ARC; or 3) provide proof of employment. *Id.* at 10-11. Although Mother consistently visited Child, "at times [Mother was] inappropriate with [C]hild, talking about guns, [and using] inappropriate language. It was also reported that [Mother] came to [some] visit[s] intoxicated, high." *Id.* at 18.

Mr. Brabham acknowledged that Mother and Child share a parental bond. *Id.* at 13. However, Mr. Brabham testified that Child would not suffer irreparable harm if Mother's parental rights were terminated. *Id.*; *see also id.* at 20 (Mr. Brabham confirming that Child never asked to increase visitation with Mother). Mr. Brabham testified that Child's "daily medical and emotional needs" are satisfied by foster mother.[6] *Id.* Mr. Brabham confirmed that Child and foster mother share a parental bond:

> [Child] has a stable childhood. [Child] only sees [M]other once a week. [Child] has a great bond with [foster mother]. [Child and foster mother] share a great connection, great attachment. [Foster mother] helps [Child] to ensure his needs are being met, medical and dental. [Foster mother] … helps [Child] with school enrollment and things of that nature.

_____

[6] The record reflects that foster mother is an adoptive resource. *See* N.T., 8/20/24, at 14.

- 5 -

*Id.* at 13-14; *see also id.* at 14 (Mr. Brabham opining that termination of Mother's parental rights is in the best interests of Child).

After Mr. Brabham testified, the trial court asked Child's GAL for her position based on the GAL's interaction with Child.  *Id.* at 24.  The GAL explained as follows: "I don't think [Child] actually can understand the concept of adoption[,] but he's very happy where he is.  [Child is] very comfortable and seems very, very bonded with [foster mother]."  *Id.*

Mother testified that she completed drug and alcohol and parenting programs through Northeast Treatment Centers (NET or the NET).  *Id.* at 25; *see also id.* (wherein Mother's drug and alcohol and parenting certificates of completion were entered into evidence as Mother's Exhibits 1 and 2, respectively).[7]  Mother claimed that she additionally completed a mental health treatment program through the NET, but could not provide a certificate of completion.  *Id.*

Mother further testified that she had a medical marijuana license, but acknowledged that the license had expired.  *Id.* at 27.  Mother did not produce the expired medical marijuana license, and she could not provide a time period during which her license was active.  *Id.* at 27, 31, 34.  Mother explained that she had a prescription for Xanax for "depression and anxiety," but Mother did

---

[7] The record discloses that Mother's Exhibit 1 is unsigned by the treatment provider.  *See* Mother's Exhibit 1.  The record further discloses that both certificates of completion are dated November 2023, approximately four months **after** DHS filed its TPR petition.  *See* Mother's Exhibits 1 and 2.

not produce a prescription, and, paradoxically, denied having any mental health issues. *Id.* at 32-33. Mother claimed that if she was drug tested, she would not test positive for marijuana or benzodiazepine. *Id.* at 34.

At the conclusion of the TPR hearing, the trial court emphasized the significance of Mother's substance abuse issues. *Id.* at 46. The trial court indicated that it was ordering a drug test for Mother "forthwith." *Id.* The trial court then asked Mother when she had last used marijuana. *Id.* Mother responded, "Last night." *Id.* Thereafter, the trial court involuntarily terminated Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). N.T., 8/20/24, at 46-47; Decree, 8/20/24, at 1-2.

Mother filed a timely notice of appeal and contemporaneous Pa.R.A.P. 1925(a)(2)(i) concise statement. The trial court has also complied with Rule 1925.

Mother raises a single issue for our review:

Did the [trial] court commit reversible error in terminating [M]other['s] parental rights[,] where [DHS] failed to establish by clear and convincing evidence that [Mother] cannot or will not be able to remedy the incapacity and conditions which led to [Child's] removal[?]

Mother's Brief at 3.

Although Mother's above issue appears only to implicate Section 2511(a)(2),[8] we observe that, in her brief, Mother challenges termination under Section 2511(a)(1), (2), (5), (8), and (b). *See* Mother's Brief at 7-9.

We review the termination of parental rights for an abuse of discretion. *See Interest of K.T.*, 296 A.3d 1085, 1104 (Pa. 2023). This standard of review requires appellate courts to

> accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> As the Pennsylvania Supreme Court discussed in *In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010), there are clear reasons for applying an abuse of discretion standard of review…. Unlike trial courts, appellate courts are not equipped to make fact-specific determinations on a cold record, where trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility

_____

[8] Section 2511(a)(2) provides that termination is permitted where

> [t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

determinations and judgment; instead, we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*Interest of K.T.*, 324 A.3d 49, 56 (Pa. Super. 2024) (brackets omitted)

(quoting *In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012)).

Termination of parental rights is governed by Section 2511 of the

Adoption Act, which requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [Section] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [Section] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Matter of Adoption of L.C.J.W.*, 311 A.3d 41, 48 (Pa. Super. 2024) (citation

omitted). The standard of "clear and convincing" evidence is defined as

"evidence that is so clear, direct, weighty, and convincing as to enable a trier

of fact to come to a clear conviction, without hesitance, of the truth of the

precise facts in issue." *Int. of R.H.B.*, 327 A.3d 1251, 1256 (Pa. Super. 2024)

(quotation marks and citation omitted). Finally, this Court need only agree

with the trial court as to "any one subsection of [Section] 2511(a), in addition

to [Section] 2511(b), in order to affirm the termination of parental rights."

*Int. of M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022) (citation omitted).

Preliminarily, we observe that Mother's two-and-a-half-page argument is undeveloped. *See* Mother's Brief at 7-9. While Mother cites to caselaw and statutory sections setting forth the basic law concerning the involuntary termination of parental rights, Mother fails to cite to the record or to connect any authorities to her conclusory arguments. *See Interest of D.R.-W.*, 227 A.3d 905, 911 (Pa. Super. 2020) ("Given the lack of discussion and citation to relevant legal authority, we find that [parent] has waived any issues relating to error on the part of the trial court as it relates to 23 Pa.C.S. § 2511." (citation omitted)); *see also* Pa.R.A.P. 2119(a) (requiring that arguments be "followed by such discussion and citation of authorities as are deemed pertinent."), (c) (requiring "a reference to the place in the record where the matter referred to appears"). Because Mother has not adequately developed her issue for review, it is waived.

Waiver notwithstanding, Mother's issue entitles her to no relief.

We examine Mother's challenge pursuant to Section 2511(a)(1), which provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1).

- 10 -

Concerning Section 2511(a)(1), Mother argues that

the record shows that [Mother] is able to remedy her parental incapacity. [Mother's] conduct in completing a parenting program and a drug treatment program, together with her [] acquisition of housing and her consistent visitation[,] demonstrate that she will be able to remedy her parental incapacity and that she [] did not have a settled purpose of relinquishing her parental claim.

Mother's Brief at 9.

DHS counters that

Child had been in [DHS's] care [] for 40 months, and Mother has not made meaningful progress with her SCP objectives to warrant unsupervised contact, let alone reunification. [At] the [time of the TPR] hearing, concerns with Mother's substance use, mental health, and parenting capacity remained unaddressed.

DHS Brief at 11.

To satisfy Section 2511(a)(1), the petitioner "must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." ***In re Adoption of B.G.S.***, 245 A.3d 700, 706-07 (Pa. Super. 2021) (citation omitted); ***see also Interest of C.S.***, 327 A.3d 222, 237 (Pa. Super. 2024) ("Section 2511(a)(1) does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child *and* refusal or failure to perform parental duties." (citation and brackets omitted; emphasis in original)).

We have explained that in applying Section 2511(a)(1),

[t]he court should consider the entire background of the case and not simply … mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

***In re Adoption of A.C.***, 162 A.3d 1123, 1129 (Pa. Super. 2017) (citations and paragraph break omitted). However, the General Assembly's emphasis on the six months immediately preceding the filing of the petition indicates the timeframe is the "most critical period for evaluation" of a parent's conduct. ***In re Adoption of L.A.K.***, 265 A.3d 580, 592 (Pa. 2021).

Regarding the definition of "parental duties," our Supreme Court has explained:

Our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert himself to take and maintain a place of importance in a child's life. Fortitude is required, as a parent must act with "reasonable firmness" to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities.

***Id.*** (citations, some quotation marks, and brackets omitted).

Instantly, the trial court concluded that DHS carried its burden of establishing termination was warranted pursuant to Section 2511(a)(1):

[M]other was given several [SCPs] to complete in order to achieve reunification with [Child]: (1) attending parenting classes at the [ARC]; (2) maintain employment and show proof thereof to the assigned CUA worker; (3) acquiesce to a home assessment; (4)

- 12 -

submit to random drug screens; (5) attend court dates; (6) attend visits with [Child] as ordered; and (7) attend a dual diagnosis assessment for mental health and substance abuse. Testimony from [Mr. Brabham and Mother established] that [Mother] engaged with and completed substance abuse treatment and a parenting class at the [NET] in November of 202[3], routinely attended supervised visitations with [Child], obtained stable housing, and submitted to random drug screens. However, [Mother] has failed to complete the other SCP[]s assigned to her. Most notably, she has not completed a dual diagnosis for mental health and substance abuse. Since [Mother's] substance abuse was the main issue that brought this case to court, the outstanding SCP is of primary concern to address before reunification is considered.

Trial Court Opinion, 11/19/24, at 5 (footnotes omitted).

Upon review, the trial court's factual findings are supported by the record, and we discern no abuse of discretion. *See Interest of K.T.*, 324 A.3d at 56. Although Mother presented certificates regarding parenting and substance abuse programs, she did not complete any programs through the court-ordered providers. *See* N.T., 8/20/24, at 8-9. Additionally, Mother did not begin efforts to complete her substance abuse and parenting SCPs until well **after** DHS filed its TPR petition. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) ("[W]e may not consider any effort by the parent to remedy the conditions described in subsections (a)(1), (a)(6) or (a)(8) if that remedy was initiated after the parent was given notice that the [TPR] petition had been filed." (citation omitted)); *see also* Mother's Exhibit 3 (Correspondence) (wherein a NET representative indicated that Mother began her parenting classes on September 26, 2023).

As Mother failed to comply with virtually any of her SCPs in the approximately three years before DHS filed the TPR petition, we cannot conclude that the trial court improperly determined that Mother's conduct "evidenced a settled purpose of relinquishing parental claim to [C]hild …." 23 Pa.C.S.A. § 2511(a)(1). Accordingly, Mother's challenge to termination pursuant to Section 2511(a)(1) merits no relief.[9]

In her final issue, Mother ostensibly challenges termination of her parental rights under 23 Pa.C.S.A. § 2511(b). The entirety of Mother's argument follows: "The record [] shows that [Child] would be irreparably harmed by the termination. The testimony at the [TPR] hearing was that [Mother] shares a parental bond with [Child]." Mother's Brief at 9.

When the trial court finds grounds for termination under Section 2511(a), it must separately consider a child's needs and welfare:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

_____

[9] Because we agree with the trial court that DHS met its burden with respect to Section 2511(a)(1), we need not address Mother's challenge to termination pursuant to Section 2511(a)(2), (5), or (8). **See Int. of M.E.**, 283 A.3d at 830.

- 14 -

23 Pa.C.S.A. § 2511(b).

"Notably, courts should consider the matter from the child's perspective, placing [their] developmental, physical, and emotional needs and welfare above concerns for the parent." *Interest of K.T.*, 296 A.3d at 1105. Courts must also "discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* (citation omitted). However, "the parental bond is but one part of the overall subsection (b) analysis." *Id.* at 1113.

> The Section 2511(b) inquiry must also include consideration of other important factors such as: the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability.

*Id.* (footnote and citations omitted).

Instantly, the trial court found that Child "is bonded with [foster mother,] and [Child] looks to [foster mother] for his daily medical and emotional needs." Trial Court Opinion, 11/19/24, at 2 (footnote omitted). The trial court concluded that Mother "has not completed her SCP[]s to such a degree that reunification would not be in [Child's] best interest." *Id.* at 7.

The reasoning and determination of the trial court are supported by the record and free of legal error. *See Interest of K.T.*, 324 A.3d at 56. Mr. Brabham testified that Child has had a "stable childhood" since being in foster mother's care, and opined that Child would not suffer irreparable harm from

- 15 -

the termination of Mother's parental rights.  N.T., 8/20/24, at 13-14.  Mr. Brabham further testified that termination of Mother's parental rights is in the best interest of Child.  *Id.* at 14.  The trial court did not abuse its discretion when it determined that the mere existence of a parental bond between Mother and Child did not outweigh Child's need for permanence.  *See Interest of K.T.*, 296 A.3d at 1113.  This is especially true in view of the lengthy period of time Child has been in foster care, and the substantial bond between Child and foster mother.  *See id.*

As the record supports the trial court's determination that termination is in Child's best interests, Mother's challenge to termination under Section 2511(b) merits no relief.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/21/2025