J-A02026-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF: J.G.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.L.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 896 WDA 2024 |

Appeal from the Decree Entered July 11, 2024
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
32A in Adoption 2024

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF: E.M.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.L.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 897 WDA 2024 |

Appeal from the Order Entered July 11, 2024
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
32 in Adoption 2024

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF: A.C.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.L.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 898 WDA 2024 |

Appeal from the Order Entered July 11, 2024
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
32B in Adoption 2024

BEFORE:  KUNSELMAN, J., MURRAY, J., and BECK, J.

MEMORANDUM BY MURRAY, J.                    **FILED: MARCH 18, 2025**

K.L.B. (Mother) appeals from the orphans' court's orders granting the petitions filed by the Erie County Office of Children and Youth (OCY or the Agency), and involuntarily terminating Mother's parental rights to her children, E.M.B. (born in July 2017), J.G.B. (born in October 2018), and A.C.B. (born in February 2023) (collectively, Children).[1]  Counsel for Mother, Kari A. Froess, Esquire (Counsel), has filed a petition to withdraw from representation and a brief pursuant **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).[2]  After careful review, we grant Counsel leave to withdraw and affirm the orphans' court's orders.

Mother and J.M.B. (Father)[3] (collectively, Parents) are the biological parents of Children.  According to OCY's termination petitions, Mother has a history with OCY dating back to 2010, "for concerns regarding substance abuse and untreated mental health [issues]."  Termination Petitions, 3/19/24, ¶ 9(d)(6).  On June 26, 2023, Children were removed from Parents by means

_____

[1] Foster parents are an adoptive resource.

[2] **See also In re S.M.B.**, 856 A.2d 1235, 1237 (Pa. Super. 2004) (explaining that the **Anders** procedure for withdrawal of court-appointed counsel has been extended to appeals involving the termination of parental rights).

[3] The orphans' court also involuntarily terminated Father's parental rights to Children.  Father separately appealed the termination orders at Nos. 990, 991, and 992 WDA 2024.

of an emergency protective order. The dependency court adjudicated Children dependent on July 17, 2023, based on, *inter alia*, Parents' history of involvement with OCY, domestic abuse, and abuse of alcohol/drugs.

The dependency court originally set the permanency goal for Children as reunification. The dependency court conducted review hearings on October 25, 2023, December 14, 2023, and February 26, 2024. After the review hearing on October 25, 2023, the dependency court added a concurrent permanency goal of adoption. Following the review hearing on February 26, 2024, the dependency court changed the permanency goal for each child solely to adoption. Dependency Court Orders, 2/26/24.

Relevant to this appeal, on March 19, 2024, OCY filed petitions for the termination of Mother's parental rights as to Children based, in part, on her continued use of illicit substances. Termination Petition, 3/19/24, ¶ 9(i). On March 26, 2024, the guardian *ad litem* (GAL) for Children, Deanna L. Heasley (Attorney Heasley), filed a motion for the appointment of separate legal counsel for E.M.B. and J.G.B.,[4] based upon a possible divergence between their best interests and legal interests. The orphans' court subsequently appointed separate legal interests counsel for E.M.B. and J.G.B.

The orphans' court conducted the termination hearing on July 9, 2024. On July 11, 2024, the orphans' court filed orders terminating Mother's parental

---

[4] Attorney Heasley did not seek separate legal counsel for A.C.B., who was 16 months old at the time of the termination hearing.

- 3 -

rights as to Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b). Mother timely filed separate notices of appeal from the orphans' court's orders.

Counsel for Mother contemporaneously filed Pa.R.A.P. 1925(a)(2)(i) concise statements challenging termination under 23 Pa.C.S.A. § 2511(a) and (b), and indicating Counsel's intention to withdraw pursuant to **Anders**. Following a remand, the orphans' court issued its Opinion on February 4, 2025. **See In re Adoption of J.G.B.**, 2024 Pa. Super. Unpub. LEXIS 3314, 2025 WL 40271 (Pa. Super. filed Jan. 3, 2025) (unpublished memorandum) (remanding for new opinion).

Preliminarily, Counsel seeks to withdraw from representing Mother pursuant to **Anders** and **Santiago**. **Anders** and **Santiago** require an attorney seeking to withdraw to (1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; (2) file a brief referring to anything in the record that might arguably support the appeal; and (3) furnish a copy of the brief to the appellant and advise her of her right to obtain new counsel, or file a *pro se* brief to raise any additional points the appellant deems worthy of review. **Santiago**, 978 A.2d at 358-61.

In **Santiago**, our Supreme Court further addressed the briefing requirements where court-appointed appellate counsel seeks to withdraw from representation:

[I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Id.** at 361. Substantial compliance with these requirements is sufficient. **Commonwealth v. Wrecks**, 934 A.2d 1287, 1290 (Pa. Super. 2007). After establishing that counsel has met the antecedent requirements to withdraw, this Court makes an independent review of the record to confirm the appeal is wholly frivolous. **See Commonwealth v. Dempster**, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*) ("[P]art and parcel of **Anders** is our Court's duty to review the record to insure no issues of arguable merit have been missed or misstated.").

In her petition to withdraw, Counsel certifies that after a thorough review of the record, she concludes Mother's issues are wholly frivolous. Petition to Withdraw, 9/20/24, ¶¶ 4-5. Counsel states she has furnished a copy of the **Anders** brief to Mother and advised Mother of her right to obtain new counsel or file a *pro se* brief to raise any additional points Mother deems worthy of review. **See id.** ¶ 7. Counsel's **Anders** brief provides a detailed summary of the procedural history and facts of the case and asserts two issues that could arguably support the appeal. Counsel states her reasons for concluding the appeal is frivolous. Based on the foregoing, we conclude

Counsel has substantially complied with the requirements of **Anders** and **Santiago**.

The **Anders** brief identifies the following two issues for our review:

1. Did the orphans' court commit an abuse of discretion or error of law when it concluded that the [A]gency established sufficient grounds for termination under 23 Pa.C.S.A. § 2511?

2. Did the orphans' court commit an abuse of discretion or error of law when it concluded that termination of [Mother's] parental rights was in the Children's best interests under Section 2511(b)?

**Anders** Brief at 4.[5]

We review the termination of parental rights for an abuse of discretion. **See In the Int. of K.T.**, 296 A.3d 1085, 1104 (Pa. 2023). This standard of review requires appellate courts to

accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

As the Pennsylvania Supreme Court discussed in **In re: R.J.T.**, 9 A.3d 1179, 1190 (Pa. 2010), there are clear reasons for applying an abuse of discretion standard of review…. Unlike trial courts, appellate courts are not equipped to make fact-specific determinations on a cold record, where trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. **R.J.T.**,

---

[5] We decline to deem the issues waived, based upon deficiencies in the Pa.R.A.P. 1925 concise statement.

9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead, we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In the Interest of K.T.*, 324 A.3d 49, 56 (Pa. Super. 2024) (brackets omitted) (quoting *In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012)).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [Section] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [Section] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Matter of Adoption of L.C.J.W.*, 311 A.3d 41, 48 (Pa. Super. 2024) (citation omitted). The standard of "clear and convincing" evidence is defined as "evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Int. of R.H.B.*, 327 A.3d 1251, 1256 (Pa. Super. 2024) (quotation marks and citation omitted). Finally, this Court need only agree with the orphans' court as to "any one subsection of [Section] 2511(a), in

- 7 -

addition to [Section] 2511(b), in order to affirm the termination of parental rights." ***Int. of M.E.***, 283 A.3d 820, 830 (Pa. Super. 2022) (citation omitted).

We examine Mother's challenge to the termination of her parental rights pursuant to Section 2511(a)(1), which provides as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1).

> To satisfy Section 2511(a)(1), the petitioner
>
> must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties….

***In re Adoption of B.G.S.***, 245 A.3d 700, 706-07 (Pa. Super. 2021) (citation omitted); ***see also Interest of C.S.***, 327 A.3d 222, 237 (Pa. Super. 2024) ("Section 2511(a)(1) does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child *and* refusal or failure to perform parental duties." (citation and brackets omitted; emphasis in original)).

We have explained that in applying Section 2511(a)(1),

> [t]he court should consider the entire background of the case and not simply … mechanically apply the six-month statutory provision. The court must examine the individual circumstances

of each case and consider all explanations offered by the parent facing termination of his parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re Adoption of A.C.*, 162 A.3d 1123, 1129 (Pa. Super. 2017) (citations and paragraph break omitted). However, the General Assembly's emphasis on the six months immediately preceding the filing of the petition indicates the timeframe is the "most critical period for evaluation" of a parent's conduct. *In re Adoption of L.A.K.*, 265 A.3d 580, 592 (Pa. 2021).

Regarding the definition of "parental duties," our Supreme Court has explained:

Our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert himself to take and maintain a place of importance in a child's life. Fortitude is required, as a parent must act with "reasonable firmness" to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities.

*Id.* (citations, some quotation marks, and brackets omitted).

In the *Anders* brief, Counsel explains that Mother argues the evidence failed to demonstrate that her "repeated and continued incapacity, abuse, neglect or refusal caused [Children] to be without essential parental care[.]" *Anders* Brief at 14. Mother claims the record failed to establish that "she cannot or will not remedy these conditions." *Id.* Counsel deems this claim frivolous:

Mother in this case demonstrated little to no compliance with the [c]ourt-ordered Permanency Plan. The mandates were clear and there is no evidence of record that she was unaware of them. [] OCY's caseworker testified that [] Mother did not accomplish any of the goals in this case. Although Mother pointed to the fact that her housing had been stable, she was unable to demonstrate that she was free from drug use[,] as she either tested positive or [did not show up] for urinalysis testing. Based upon these facts, termination was legal [and] appropriate[,] and [Mother's argument is] without merit.

*Id.* at 15.

In its petition for involuntary termination of Mother's parental rights, OCY asserted that Mother was admitted to the hospital on June 21, 2023. *Id.* Petition for Termination, 3/19/24, ¶ 9(d)(1). According to the petition,

[Mother] was uncooperative with providing a urine sample and reportedly dumped out a sample and urinated in the bed to avoid testing. When a sample was finally able to be obtained, the results were positive for amphetamines. [Mother] denied using any illicit substances….

[] Subsequently, on June 26, 2023, [] testing confirmed the sample was positive for amphetamines and methamphetamines….

*Id.* ¶¶ 1-2.

OCY alleged Mother had admitted using "methamphetamine two days prior to her hospital admission[,] when she found the drug "lying around the home." *Id.* ¶ 2. According to OCY, caseworkers found,

[i]n the bedroom and within reach of [Children,] [] prescription bottles (some unlabeled and some in another individual's name), empty marijuana containers, laxatives, and other items indicative of drug paraphernalia. There was also a pouch full of knives and other sharp objects within reach of [Children]….

*Id.* In addition, OCY stated that Mother had alleged that Father was abusing illicit substances. *Id.* Nevertheless, Mother allowed Father to be in a primary caregiver role to Children. *Id.* OCY also alleged that on June 25, 2023, "it was reported that [Children] had witnessed [Father] push [Mother] and … hurt her stomach." *Id.* ¶ 4.

The dependency court ordered a permanency plan that required Mother to, *inter alia*, refrain from using drugs and alcohol and submit to random urinalysis testing; participate in an assessment to determine if she is eligible for Erie County Family Dependency Treatment Court; follow all recommendations from that court; participate in a mental health assessment and follow all recommendations; obtain safe and stable housing condition via a signed lease agreement; participate in an OCY-approved parenting program and follow all recommendations from that program; and maintain regular contact with OCY staff and sign all releases requested. *Id.* ¶ 9(e).

The orphans' court summarized the evidence presented at the termination hearing:

> [Mother and Father] appeared at trial and were represented by [separate] counsel. E.M.B. and J.G.B.'s legal interests were represented by Attorney Christine A. Konzel [(Attorney Konzel)]; A.C.B. was not represented by Attorney Konzel, as [the] child was one year of age at the time of the hearing. Attorney Konzel briefly recounted an interview with E.M.B. and J.G.B. on April 11, 2024, at their foster home. Attorney Konzel established [that Children] enjoy living with their foster parents and did not wish to return to their biological parents. [N.T., 7/9/24, at 5-7.]
>
> After this, Attorney Konzel asked to be excused from the [c]ourt, upon which Attorney … Heasley, [Children's GAL], asserted[,]

- 11 -

"pursuant to ***In Re: K.M.G.***[, 240 A.3d 1218 (Pa. 2020)], that the Pennsylvania Supreme Court does permit me to represent the legal and best interest." [N.T., 7/9/24, at] 7. Attorney Heasley was the guardian *ad litem* for [Children] during the dependency proceedings and stated she could "continue as attorney for [Children] in this proceeding, because there is no divergence [between Children's best and legal interests]." [***Id.*** at] 7.

Upon Attorney Konzel being excused from the [c]ourtroom, Attorney [] Heasley, [Children's] guardian *ad litem*, "[continued] as the attorney for [Children] … because there is no divergence [between Children's] best and legal interests.]" [***Id.***] The [orphans'] court accepted Attorney Heasley's representation…. ***See In re Adoption of K.M.G.***, … 240 A.3d 1218 ([Pa.] 2020).

OCY presented numerous exhibits and testimony of seven witnesses to the court in support of their petitions to terminate both Mother and Father's parental rights. At the outset of the [involuntary termination] hearing, [counsel] for OCY introduced the following exhibits without objections:

1. Certified Juvenile Dependency Docket

2. Prior Juvenile Dependency Documentation (In the Interest of A.B.)

3. Prior Juvenile Dependency Documentation (In the Interest of E.B.)

4. Prior Juvenile Dependency Documentation (In the Interest of E.B. & J.B.)

5. Juvenile Dependency Petitions (In the Interest of E.B., J.B., & A.B.)

6. Juvenile Dependency Court Orders (In the Interest of E.B., J.B., & A.B.)

7. Juvenile Dependency Court Summaries (In the Interest of E.B., J.B., & A.B.)

8. Psychological Evaluation by Dr. Peter von Korff ([Father])

9. Urinalysis Screen Results ([Mother])

10.     Urinalysis Screen Results ([Father])

11.     Adult Probation Urinalysis Screen Results dated 10/25/23 ([Mother]) and 12/13/23 ([Mother] and [Father])

12.     Protection from Abuse Documentation at Docket Nos. 16371-2023, 16321-2020 & 16201-2014

13.     Certified Criminal Docket ([Mother]).

Exhibit 9, summarizing Mother's urinalysis screens, shows 12 negative results, one diluted sample, 5 instances where Mother could not produce a sample, **62 no-show appointments**, **and 17 positive results for Methamphetamine and Amphetamine.** [OCY's] Exhibit 9, Urinalysis Screen Results….

Orphans' Court Opinion, 1/27/25, at 12-13 (citations in original; emphasis added).

The orphans' court summarized the testimony relevant to the termination of Mother's parental rights:

[OCY caseworker Molly Freeborough (Caseworker Freeborough)] was assigned to [Parents'] dependency case for E.M.B. and J.G.B. in September 2021 …. Caseworker Freeborough stated Mother's concerns included "not actively caring for [C]hildren," "renting a room at her place of employment," and substance abuse, as E.M.B. "was born drug-exposed. He tested positive for morphine at the time of delivery." N.T.[, 7/9/24, at] 54-55. During this 2021 case, Caseworker Freeborough stated Mother received "preservation services," "mental health services," and drug and alcohol treatment from "Gaudenzia" and "Safe Harbor," where [Mother] was assigned a "certified recovery specialist and an intensive care manager." [*Id.* at] 59.

*Id.* at 16-17 (citations in original). OCY caseworker Jade McKay (Caseworker

McKay) testified that

> she was assigned to [Mother's] … June 21st, 2023[,] case. Caseworker McKay stated that the onset of this case was "[M]other [testing] positive for amphetamines and … refusing to do a urinalysis for the hospital[]" …. N.T.[, 7/9/24, at] 68. OCY asked Caseworker McKay about the circumstances of the [C]hildren's removal:
>
>> … [Mother] initially reported that she did use methamphetamine two days prior to her hospitalization. However, [she] recanted that, and then became escalated [towards the Agency, telling us to take [Children].
>
> [*Id.* at] 70.
>
> Caseworker McKay testified that, upon OCY holding a shelter care hearing, the [dependency court directed that C]hildren stay in "the [] foster home that [C]hildren were in before," which was "[J.G.B.]'s third time in care, [E.M.B.]'s second time in care, and [A.C.B.'s] … first time in care." [*Id.* at] 70-71.
>
> **Caseworker McKay then testified to the substantiated allegations by OCY, including "[Mother having] ongoing substance abuse issues," "significant drug paraphernalia laying [out] in the home in reach of [C]hildren" at removal by OCY, "prescription bottles, "empty marijuana containers" near [C]hildren, and "a pouch full of knives and other sharp objects in reach of [C]hildren."** [*Id.* at] 71-72 [(emphasis added)]….

Orphans' Court Opinion, 1/27/25, at 17-18 (citations in original; emphasis

added).

The orphans' court summarized the testimony of OCY Caseworker Nicole

D'Amico (Caseworker D'Amico):

> Caseworker D'Amico testified to her involvement in [Mother's] case; according to all permanency review hearing summaries (October 25, 2023; December 13, 2023; and February 26, 2024).

Caseworker D'Amico was the assigned caseworker from OCY for the entirety of the permanency case. **See** [OCY's] Exhibit 7, Juvenile Dependency Court Summaries (**In the Interest of E.B., J.B., & A.B.**), **supra**. Caseworker D'Amico testified that Mother … [was] not compliant in "getting involved with [the Agency] and working with us," as well as "establishing a treatment plan." N.T.[, 7/9/24, at] 80….

Caseworker D'Amico further testified to Mother's relapse on "methamphetamine and amphetamine on July 27th, [2023,]" and her voluntary admission to rehabilitation[] facilities. [**Id.** at] 82. After this, Caseworker D'Amico testified to Mother's "second relapse in October," at which time Mother relayed to OCY staff "that she wanted to relinquish her parental rights to [Children] and let [Father] handle the parenting." [**Id.**] ….

\* \* \*

Caseworker D'Amico stated that, because Mother "[had] not addressed her sobriety, and ... remained an unstable parent," [OCY] responded by "[making] every effort to reunify [Children] with [Father]." [**Id.** at] 86. ….

Caseworker D'Amico testified to recommending the court change [Children's] goal to adoption at the February 26, 2024, permanency review hearing. Caseworker D'Amico explained this recommendation by saying "[Mother] had not made any progress or been compliant with her Court Ordered aspects." [**Id.** at] 89. … Caseworker D'Amico confirmed that she felt [Children] would not suffer "any significant emotional damage or negative impact" if the [orphans' court] terminated [Mother's] parental rights[,] and felt termination would "best serve [Children's] needs and welfare." [**Id.** at] 89-90.

Orphans' Court Opinion, 1/27/24, at 19-21.

[Barb Mosbacher (Ms. Mosbacher), Erie Family Center employee and former parent educator,] testified to being the "parent educator" for Mother during the dependency case. [N.T., 7/9/24, at] 144. Ms. Mosbacher's role involved connecting Mother to substance abuse and trauma therapy …. [**Id.** at] 145. Ms. Mosbacher stated Mother's "biggest barrier to being a good parent is [being a] substance abuser." [**Id.** at] 146. Ms. Mosbacher confirmed on cross-examination from OCY that Mother "has been

- 15 -

during this last dependency case … actively engaged in substance abuse," and that abuse is prohibitive for Mother "being a safe and stable caregiver." [*Id.* at] 153.

Orphans' Court Opinion, 1/27/25, at 25.

Mother testified on her own behalf. As described by the orphans' court,

Mother testified that [she] and Father ceased being "an intact couple" in 2018 or 2019. [N.T., 7/9/24, at] 122. Mother testified that there had been incidents of domestic violence since their relationship ended; Mother confirmed on cross-examination that Father was "verbally abusive" and "[choked]" and "[slammed]" Mother, "breaking [her] back" in 2020. [*Id.* at] 136. Mother stated she sought a Temporary Protection From Abuse [(PFA)] order in June 2023 to "demonstrate to [OCY] that [she] wouldn't let the domestic violence stuff happen." [*Id.* at] 122. Mother never obtained a Final [PFA] Order.

When testifying about her drug abuse issues, Mother stated she had been "13 months clean" at the time of her June relapse[,] which began the dependency case. [*Id.* at] 125. Mother explained the circumstances of this relapse by saying she had been reorganizing her house and "found stuff. I thought that I could do it one time, and that one time led to further—not one time[]. It was long lasting." [*Id.*] Mother further testified that, while receiving rehabilitation at Glenbeigh, she "was diagnosed with generalized anxiety, social anxiety, and ADHD." [*Id.* at] 129. Mother stated on cross-examination that she had been dealing with substance abuse since "2020," which included being prescribed "[oxycodone]" during the "last six months of [her] pregnancy with [J.G.B.]," which she described as "super hard" to stop using. [*Id.* at] 133. Mother also confirmed that "[E.M.B.] was born drug[-]exposed." [*Id.*] Upon questioning from [Attorney Heasley], Mother admitted that A.C.B., being "17 months old" at the time of trial, had "been out of [Mother's] care for 13 months." [*Id.* at] 139.

Orphans' Court Opinion, 1/27/25, at 24.

The orphans' court determined that OCY established that termination is appropriate under 23 Pa.C.S.A. § 2511(a)(1):

Termination of Mother's parental rights is justified under 23 Pa.C.S.A. [§] 2511(a)(1). [OCY] filed the petition for involuntary termination of parental rights on March 19, 2024. … Based upon the Agency's exhibits and witness testimony, Mother's abuse of amphetamines and methamphetamines were ongoing during the six months prior to the Agency's filing, leading to a complete absence of contact between Mother and [Children]. This establishes the "[failure] to perform parental duties" element of [Section] 2511(a)(1). 23 Pa.C.S.A. [§] 2511(a)(1). Further, while this assertion was momentary, Mother additionally told [OCY] staff to "take her kids," according to Caseworker McKay's testimony. N.T.[, 7/9/24, at] 70. Given Mother's inability to overcome her "biggest barrier to being a good parent," per Ms. Mosbacher's testimony, Mother has additionally shown a "settled purpose of relinquishing parental claim" to her children via her substance abuse difficulties. [*Id.* at] 146; 23 Pa.C.S.A. § 2511(a)(1).

Orphans' Court Opinion, 1/27/25, at 26. The orphans' court's findings are supported in the record and its legal conclusion is sound. *See id.* We discern no error or abuse of the orphans' court's discretion by its termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1).[6] We agree with Counsel's conclusion that this issue lacks merit and is frivolous.

We next consider whether the orphans' court properly determined termination of Mother's parental rights is appropriate under 23 Pa.C.S.A. § 2511(b). When the orphans' court finds grounds for termination under Section 2511(a), it must separately consider a child's needs and welfare:

---

[6] Because we agree with the orphans' court that OCY met its burden with respect to Section 2511(a)(1), we need not address Mother's challenge to termination pursuant to Section 2511(a)(2) or (5). *See Int. of M.E.*, 283 A.3d at 830.

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

As our Supreme Court has explained, orphans' courts must determine whether the child has a bond with the biological parent, the nature of that bond, and effect that severance of the bond would have on the child.  ***In the Interest of K.T.***, 296 A.3d at 1109.  "Notably, courts should consider the matter from the child's perspective, placing [their] developmental, physical, and emotional needs and welfare above concerns for the parent." ***Id.*** at 1105. Courts must also "discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." ***Id.*** (citation omitted).

Moreover, the parent-child bond inquiry is but one factor to consider under a proper Section 2511(b) analysis.  ***Id.*** at 1111.

The Section 2511(b) inquiry must also include consideration of other important factors such as: the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability.

*Id.* (footnote and citations omitted).

In determining whether termination serves Children's best interests, the orphans' court considered the above-referenced testimony, as well as testimony from OCY caseworker Bridgette Gerber-Winschel (Caseworker Gerber-Winschel).

> Caseworker Gerber-Winschel testified [] that she has been overseeing the services for the Children while in [foster parent's] care; E.M.B., according to Caseworker Gerber-Winschel's testimony, has been "doing fantastic" and "does not have any tantrum behaviors in school." N.T.[, 7/9/24, at] 111. J.G.B. similarly was "doing great in the daycare setting," and Caseworker Gerber-Winschel stated his "tantrum behaviors [had] come down significantly" due to placement and a medication adjustment. [*Id.* at] 111.
>
> Caseworker Gerber-Winschel testified to a home visit with [foster parent] and [Children], and stated that E.M.B. asks if he will "still be able to be adopted" when Caseworker Gerber Winschel discusses court proceedings. [*Id.* at] 112….
>
> Caseworker Gerber-Winschel, on direct examination from the Agency, stated that granting the petitions for termination of [Mother's] parental rights would "serve [C]hildren's best needs and welfare." [*Id.*] Later, on cross-examination …, Caseworker Gerber-Winschel stated that, since [the foster parent] is "the most consistent parental role in their lives," there would be no "detriment to [Children] if the bond between [Mother and Children] was severed." [*Id.* at] 116. Caseworker Gerber-Winschel later stated that [foster parent] "has gone above and beyond to meet [Children's] heightened psychiatric and behavioral needs, as well as their physical needs." [*Id.* at] 117.

Orphans' Court Opinion, 1/27/25, at 22-23 (capitalization modified).

The orphans' court's findings are supported in the record, and we discern no abuse of discretion or error in its legal conclusion. Mother's challenge to termination pursuant to Section 2511(b) merits no relief, and is frivolous.

Our independent review further discloses no non-frivolous issues that could be raised by Mother. Accordingly, we grant Counsel's petition to withdraw and affirm the orphans' court's orders terminating Mother's parental rights to Children.

Petition to withdraw granted. Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/18/2025