J-A18016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.T., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.T., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 324 WDA 2024 |

Appeal from the Order Entered February 14, 2024
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000197-2019

BEFORE:  OLSON, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY MURRAY, J.:                    **FILED: August 16, 2024**

K.T. (Mother) appeals from the order granting the petition filed by the Allegheny County Office of Children, Youth, and Families (the Agency or CYF), and involuntarily terminating Mother's parental rights to K.T. (a daughter born in June 2016) (Child).  Upon careful review, we affirm.

The Pennsylvania Supreme Court previously remanded this case to the orphans' court for reconsideration of the factors set forth in 23 Pa.C.S.A. § 2511(b), which we discuss *infra*.  Our Supreme Court adeptly summarized the factual background of this case:

> [CYF] first became involved with [Child] when she tested positive for cocaine at birth; CYF had been involved with Mother since 2009 regarding an older child.  During CYF's investigation, Mother admitted use of marijuana and alcohol[,] and CYF deemed her housing unstable.  CYF referred Mother for a drug and alcohol abuse assessment with Pennsylvania Organization for Women in Early Recovery (POWER), as well as housing assistance and in-

home services with Family Resource. CYF also required Mother to begin regular urine drug screenings.

Prompted by continued housing instability, a report of intimate partner violence between Mother and Child's biological father,[FN1] and Mother's failure to follow through with service referrals, CYF sought a finding of dependency on January 26, 2017. Prior to the dependency hearing, CYF removed Child under an Emergency Custody Authorization (ECA) on March 7, 2017, due to a report Mother "allegedly became physical" with one of her older children who dropped Child.[FN2] N.T. Termination Hearing, 3/22/21 at 15. On March 27, 2017, the dependency court found Child dependent and ordered all contact between Mother and Child to be supervised. Child was placed with a foster parent and adoptive resource, her godmother[ (Foster Mother)], in June 2017. The court also ordered Mother to complete a drug and alcohol assessment, related treatment, and urine drug screenings.

---

[FN1] Father's parental rights were involuntarily terminated in October 2021.

[FN2] Mother has two older children, daughter A. and son L.W.

---

For more than two years, while Child remained in her foster home, and prior to CYF filing for termination, Mother was inconsistent with participation in CYF's recommended services.[FN3] During this time, she continued to struggle with her sobriety, mental health, and behavior, relapsing after treatment programs, testing positive on five occasions for [controlled] substances, and gaining a criminal record of five summary citations, some involving her children, as well as aggressive behavior.[FN4]

---

[FN3] Mother attended some teaming and conferencing meetings with CYF. *See* N.T. 3/22/21 at 30. She attended most permanency review hearings. *See id.* at 31. Mother attended thirty-four of the fifty-seven mandated substance screenings. *See id.* at 84. In August 2017, Mother completed POWER's drug and alcohol assessment, after failing to comply on two other occasions, and she was "recommended for inpatient treatment." *See id.* at 62-63. Mother then checked herself into Gateway

[Rehabilitation] on September 27, 2017[,] for treatment and later[, Mother] transferred to Sojourner House. *See id.* at 63. She left Sojourner House without completing the program. *See id.* at 65. In December 2017, Mother completed an intake at Family Links after CYF referred her for mental health concerns. *See id.* at 85. Mother later began SHORES, a drug and alcohol treatment program, following a referral from CYF and a positive drug test, but SHORES discharged Mother for missing sessions. *See id.* at 65-66. On June 21, 2018, Mother completed another assessment with SHORES in which they recommended intensive outpatient services. *See id.* at 67. Instead, Mother agreed to twice a week, in-home counseling. *See id.* Mother successfully completed the SHORES program in January 2019. *See id.* at 72. In April 2019, Mother completed another drug and alcohol assessment and was given no further recommendations. *See id.* at 73-74. But, after another positive drug test result, CYF referred Mother for a POWER assessment in May of 2019. *See id.* Mother did not complete the assessment. *See id.*

[FN4] While Mother was pregnant with Child, she pled guilty to two summary citations of disorderly conduct. *See Int. of K.T.*, No. DP-091-2017, slip op. at 7 (C.P. Allegheny, Nov. 22, 2021). After Child's removal from her care, Mother pled guilty in 2018 to four summary citations: retail theft, harassment …, defiant trespassing, and disorderly conduct. *See id.* In August of 2019, Mother pled guilty to another summary citation of disorderly conduct[. Mother] was also involved in an incident leading to a summary citation of disorderly conduct, engaging in fighting, in November of 2019. *See id.* at 7-8. Following CYF's filing for termination in October 2019, Mother pled guilty in 2020 to summary citations for harassment and criminal mischief. *See id.* at 8. Testimony at the termination proceeding showed three incidents, those leading to Mother's August and November 2019 citations and 2020 citations, involved her older children. …

Prior to CYF's filing for termination, Mother attended most visits with Child[,] which were typically scheduled for three times a week. Visits were both supervised and unsupervised. In October 2018, the court permitted Mother to have unsupervised, overnight visits with Child, but by February 2019, Mother's visits were moved back to supervised due to concerns about her sobriety. In April 2019, the court gave permission to move back to unsupervised visits, but before these could begin, Mother tested

positive for [controlled] substances and the court granted CYF's request [that] visits remain supervised. Mother also failed to return Child timely on two occasions, and once required CYF to seek a court order returning Child to its custody. *See* Order to Take Child into Custody, 6/19/19. Although Mother stabilized her housing by May 2019, CYF had ongoing concerns with Mother's continued substance abuse, recent criminal offenses, and failure to return Child in a timely fashion, and by August 2019, Child's permanency goal was changed to adoption. *See* N.T. 3/22/21 at 29-30.[FN5] By this time, Child was three years old and had not lived with Mother since June 2017.[FN6]

---

[FN5] … Mother did not file an appeal from this decision. …

[FN6] Even during the period Child lived with Mother, Child was actually in maternal grandmother's care (with whom Mother lived) and Mother's contact was ordered to be supervised.

*Interest of K.T.*, 296 A.3d 1085, 1090-92 (Pa. 2023) (footnotes in original).

On October 28, 2019, CYF filed a petition to involuntarily terminate Mother's parental rights to Child, pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The orphans' court scheduled a hearing, which occurred on March 22, 2021, and May 13, 2021 (the termination hearing).

CYF presented seven witnesses[ at the termination hearing]: Amanda McCloy[ (Ms. McCloy)], a CYF caseworker; William Pipkins, family transportation supervisor with Second Chance, the organization that scheduled, supervised, and provided transportation for a portion of Mother's visits with Child; Myelodie Turner, Mother's caseworker with Second Chance; Brett Basic, police detective dispatched for the incident resulting in Mother's August 2019 disorderly conduct offense; Ronald Bobick, police officer dispatched to assist in the enforcement of an ECA for Mother's older child[,] L.W.; Ryan Miller, police sergeant dispatched for the incident resulting in Mother's October 2020 guilty pleas on [the] criminal mischief and harassment citations; and Neil Rosenblum, Ph.D.[ (Dr. Rosenblum)], court-appointed clinical psychologist who performed three individual and interactional evaluations of Mother, Child, and Foster Mother.

- 4 -

Mother presented three witnesses: Daniel Garrighan, facility director of Jade Wellness Center[,] where Mother received drug and alcohol outpatient services starting in August 2020; Jawana Warren, site director at the Clairton Family Center[,] where Mother completed parenting classes in October 2020; and Lisa Penn, program manager with POWER.

*Id.* at 1091-92.

Pertinent to the Supreme Court's remand, Dr. Rosenblum testified regarding the bond between Child and Mother, and Child and Foster Mother. As summarized by the Supreme Court:

Child is "always glad to see Mother," "loves her," and enjoys spending time with her, but Child's relationship with her is "more ancillary" and "playful" like a "big sister" or "aunt." [N.T. Termination Hearing, 5/13/21,] at 84, 90, 93. [Dr. Rosenblum] said Mother is "nurturing" and "affectionate," but "tends to be comfortable with creating an emotional dependency." *Id.* at 85, 87. She is not "as focused on helping Child to expand her developmental competencies and to build her self-esteem." *Id.* at 87. Specifically, [Dr. Rosenblum] noted, in the last two evaluations, Mother "spent more time focused" on "Child's appearance," suggesting "she's not getting adequate physical care" with Foster Mother, than "engaging Child in positive activities." *Id.* at 85-86. [Dr. Rosenblum] further testified[,] "I think it makes Child uncomfortable." *Id.* at 86. He went on to explain "it is pretty well-known that Mother and Foster Mother do not get along" and "Foster Mother indicates that Mother has harassed her." *Id.* at 85.

Dr. Rosenblum further testified that Child "receives excellent, outstanding care from her Foster Mother" and "her primary attachment is definitely to her Foster Mother." *Id.* at 88, 90. He testified "Foster Mother does a particularly good job of building Child's confidence and encouraging her." *Id.* at 87. He explained "Child has developed attachments, healthy attachments, to her Foster Mother and her foster siblings." *Id.* at 89. [Dr. Rosenblum] explained her foster home "is the foundation of her emotional well-being." *Id.* at 121.

*Id.* at 1092-93 (internal brackets omitted).

On October 13, 2021, the orphans' court denied CYF's petition to involuntarily terminate Mother's parental rights. The orphans' court found that although CYF met its burden of establishing grounds for termination under Section 2511(a)(2), (5), and (8), CYF failed to prove that termination of Mother's parental rights would "serve the needs and welfare of [C]hild[,]" pursuant to Section 2511(b). Order, 10/13/21. CYF and Child, through her *guardian ad litem*, timely appealed. CYF and Child asserted the orphans' court erred in concluding CYF failed to establish that termination of Mother's parental rights would serve the needs and welfare of Child. **See** Rule 1925(b) Statement (Child), 10/20/21; Rule 1925(b) Statement (CYF), 10/22/21.

A divided panel of this Court affirmed the orphans' court's order finding grounds for termination under Section 2511(a), but denying CYF's petition based upon its failure to establish termination was warranted under Section 2511(b). **See Interest of K.T.**, 281 A.3d 1040 (Pa. Super. 2022) (unpublished memorandum). The Pennsylvania Supreme Court subsequently granted allowance of appeal on August 18, 2022. **See Interest of K.T.**, 283 A.3d 1249 (Pa. 2022). The Supreme Court limited the appeal to clarify the appropriate bond analysis required by Section 2511(b). **Id.** at 1250.

The Supreme Court subsequently reversed this Court's order affirming the denial of the termination petition. The Supreme Court concluded the orphans' court and this Court employed the incorrect standard in applying Section 2511(b):

[T]he lower tribunals focused their Section 2511(b) analysis only on whether severing the parental bond would have an "adverse" or "detrimental" impact on Child and, finding such impact was supported by the record, concluded this one factor precluded termination of Mother's parental rights, above all other elements that should comprise a complete subsection (b) needs and welfare analysis. But a court conducting the Section 2511(b) needs and welfare analysis must consider more than proof of an adverse or detrimental impact from severance of the parental bond. We emphasize analysis of the parental bond is but one part of the overall subsection (b) analysis, which includes a determination of whether the bond is necessary and beneficial to the child, *i.e.*, whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare.

*Interest of K.T.*, 296 A.3d at 1112-13. Accordingly, the Supreme Court remanded the case to the orphans' court "to review the record or further develop it with the foregoing clarification of the 2511(b) analysis in hand." *Id.* at 1117.[1]

Upon remand, and with the benefit of the Supreme Court's clarification of Section 2511(b)'s dictates, the orphans' court determined that CYF met its burden of establishing that termination of Mother's parental rights best served the needs and welfare of Child. Accordingly, on February 14, 2024, the orphans' court terminated Mother's parental rights to Child. Mother timely

---

[1] The Supreme Court rejected CYF and Child's argument that the Court should "order termination of Mother's parental rights on this record." *Interest of K.T.*, 296 A.3d at 1117. The Court explained that "[a]ppellate courts reviewing such fact-bound claims arising in termination matters should defer to the trial judges who see and hear the parties and can determine the credibility to be placed on each witness …." *Id.* (quotation marks and citation omitted).

appealed[2] and filed a contemporaneous Pa.R.A.P. 1925(a)(2)(i) concise statement.

Mother presents the following issues:

I.      Did the [orphans'] court abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Mother's parental rights pursuant to [Section] 2511(a)(2), (5), and (8)?

II.     Did the [orphans'] court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the Child pursuant to [Section] 2511(b)?

Mother's Brief at 3.

We review the termination of parental rights for an abuse of discretion. *See Interest of K.T.*, 296 A.3d at 1104. This standard of review requires appellate courts to

accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of

_____

[2] On March 22, 2024, CYF and Child filed a joint motion to quash Mother's appeal as untimely. *See* Motion to Quash, 3/22/2024; *see also* Pa.R.A.P. 903(a) (a notice of appeal must be filed within thirty days of the entry of the order on appeal). Upon review, we denied the motion, observing that although the orphans' court's termination order was dated February 9, 2024, it was not entered on the trial court docket until February 14, 2024. *See* Superior Court Order, 4/5/24. Accordingly, Mother timely filed her notice of appeal within thirty days of February 14, 2024. *See id.*; *see also* Pa.R.A.P. 903(a).

discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

As [the Pennsylvania Supreme Court] discussed in [*In re:*] *R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)], there are clear reasons for applying an abuse of discretion standard of review…. [U]nlike trial courts, appellate courts are not equipped to make fact-specific determinations on a cold record, where trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead, we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 74 A.3d 817, 826-27 (Pa. 2012) (some citations omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [Section] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [Section] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Matter of Adoption of L.C.J.W.*, 311 A.3d 41, 48 (Pa. Super. 2024) (citation omitted). "The standard of 'clear and convincing' evidence is defined as

- 9 -

testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re Adoption of C.L.G.*, 956 A.2d 999, 1004 (Pa. Super. 2008) (*en banc*) (citation omitted). Finally, this Court need only agree with the orphans' court as to "any one subsection of [Section] 2511(a), in addition to [Section] 2511(b), in order to affirm the termination of parental rights." *Interest of M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022) (citation omitted).

On prior appeal, CYF and Child solely challenged termination under Section 2511(b). *See* Rule 1925(b) Statement (Child), 10/20/21, ¶ 1; Rule 1925(b) Statement (CYF), 10/22/21, ¶ 1. This Court likewise observed that the orphans' court's finding that termination is appropriate under Section 2511(a) was "uncontested." *See Interest of K.T.*, 281 A.3d 1040 (Pa. Super. 2022) (unpublished memorandum at 5). Our Supreme Court remanded solely for consideration of whether termination is appropriate under Section 2511(b). *See Interest of K.T.*, 296 A.3d at 1117 ("[C]onsidering termination's irreversible effect on a child's relationship with a parent, we allow the [orphans'] court an opportunity to review the record or further develop it with the foregoing clarification of the 2511(b) analysis in hand."). Accordingly, the orphans' court, and this Court, are limited to the scope of the remand order,

and we address only that issue. **See** Pa.R.A.P. 2591(a) ("the court … shall proceed in accordance with the judgment or order of the appellate court.").[3]

Even if Mother had preserved her present challenge to termination under Section 2511(a), we would conclude such challenge lacks merit. Instantly, we examine Mother's challenge pursuant to Section 2511(a)(2), which provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2). The petitioner must prove

> (1) repeated and continued incapacity, abuse, neglect or refusal;
> (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and
> (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

---

[3] We have further acknowledged:

> "[I]t has long been the law in Pennsylvania that following remand, a lower court is permitted to proceed only in accordance with the remand order." **Commonwealth v. Sepulveda**, … 144 A.3d 1270, 1280 n.19 (Pa. 2014). Further, "where a case is remanded for a specific and limited purpose, issues not encompassed within the remand order may not be decided on remand." **Id.** (citation omitted).

**Ratner v. Iron Stone Real Estate Fund, I, L.P.**, 266 A.3d 68, 73 (Pa. Super. 2021).

*In re A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021) (citation omitted). Grounds for termination "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id.* Further, "[p]arents are required to make diligent efforts toward the **reasonably prompt** assumption of full parental duties." *Id.* (emphasis added).

Here, regarding Section 2511(a)(2), Mother asserts CYF "failed to prove that Mother has not or cannot remedy the conditions that caused the Child to be without essential parental care." Mother's Brief at 23. Mother acknowledges Dr. Rosenblum's testimony that "he is doubtful that Mother could mature to the point where she could provide a safe and secure environment for Child." *Id.* (citing N.T., 5/13/21, at 107). Mother points out, however, that Dr. Rosenblum "also testified that there is a guarded prognosis that Mother could make a strong effort in therapy such that [she] could make significant improvements toward maturity." *Id.* (citing N.T., 5/13/21, at 126). Based upon this "guarded prognosis," Mother argues, "[i]t is premature to terminate Mother's parental rights without providing her additional time to remedy the causes of her incapacity." *Id.* at 24.

CYF responds that "Mother has not demonstrated that she could remedy the conditions that have prevented her from parenting any child since 2009[,] and she specifically has not demonstrated the capacity to do so since Child's birth in 2016." CYF's Brief at 24-25. CYF further maintains:

Although Dr. Rosenblum [testified] that the verdict may be out regarding Mother's ability to parent any child successfully in the future, he was unequivocal that the prognosis was not favorable[,] and that "**for this child** the train has left the station."

*Id.* at 25 (emphasis in original) (quoting N.T., 5/13/21, at 127).

The orphans' court addressed Mother's first issue in its Pa.R.A.P. 1925 opinion:

Mother has had continuing issues with substance abuse, having attempted several times to abstain, with the help of CYF, which started at a young age. *See* Exhibit #3[,] Dr. Rosenblum Evaluation Reports[,] pg. 3, 4, and 5. In her youth, Mother attended Woodland Hills school district, but dropped out after 9th grade. *Id.* at 3. While she has not earned her GED, she took classes while incarcerated after the birth of her first child. *Id.* She started hanging out at bars and started using marijuana at the age of 14 or 15. *Id.* This became a daily habit and she eventually started using cocaine, which was sometimes offered to her by patrons at the adult entertainment club where she worked. *Id.* Her early life has resulted in the diagnosis of several mood and personality disorders. *Id.* As a result, she has experienced issues focusing, as well as regulating her responses to stress. (Tr. 2 at 75). This had led to a history of summary citations and criminal charge(s). *See* CYF Exhibit #5 Criminal Docket. Mother has made progress in dealing with her mental health concerns, as well as substance use concerns, but has had trouble improving her judgment and achieving and maintaining a stable pattern of adjustment. *See* Exhibit #3[,] Dr. Rosenblum Evaluation Reports[,] at 26. **Mother continues to be unable to understand the role of drugs in her life and how they affect behavior** otherwise and, in combination with the other concerns regarding her mental health, this results in a guarded prognosis for improvement. (Tr. 2 at 80 and 83). Due to this evidence, CYF has established the statutory grounds for the termination of parental rights through the conduct of the parent pursuant to [Section] 2511(a)(2)[].

Orphans' Court Opinion, 4/16/24, Attach. A, at 14-15 (emphasis added).

Our review confirms the orphans' court's findings are supported by the record, and free of legal error. The record discloses that in the two-and-one-half years Child was in placement prior to CYF filing its termination petition, Mother's compliance with recommended treatment was inconsistent. *See* N.T., 3/22/21, at 55-69, 72-76 (Ms. McCloy testifying to Mother's treatment history). Despite CYF recommending drug and alcohol services, Mother continued to test positive for controlled substances, with a positive drug screen for "opiates" as recently as August 2019. *See id.* at 55-57; *see also* N.T., 5/13/21, at 78 (Dr. Rosenblum testifying that Mother admitted taking a "pain pill"). Significantly, at the time of the termination hearing, Mother had failed to complete 23 of 57 total drug screens. *See id.* at 84. Therefore, we discern no error in the orphans' court's determination that CYF proved, by clear and convincing evidence, that termination of Mother's parental rights was warranted under Section 2511(a)(2). *See S.P.*, 47 A.3d at 827 ("an appellate court must … defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion."). Mother's first issue merits no relief.

In her second issue, Mother claims termination of her parental rights is inappropriate under 23 Pa.C.S.A. § 2511(b). Mother argues "[t]he record does not include sufficient evidence to support a determination that termination of Mother's parental rights best serves the needs and welfare of

[] Child." Mother's Brief at 26. Mother asserts the orphans' court "relied only on general assumptions rather than a full evaluation of Child's needs and welfare." *Id.* at 27. Mother concedes that "it may be true that Mother cannot serve in a full-time caretaking role," but maintains that "she is still able to contribute positively to Child's life by meeting developmental and emotional needs of Child." *Id.* at 28.

When the orphans' court finds grounds for termination under Section 2511(a), it must separately consider a child's needs and welfare:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. ….

23 Pa.C.S.A. § 2511(b).

"Notably, courts should consider the matter from the child's perspective, placing [their] developmental, physical, and emotional needs and welfare above concerns for the parent." *Interest of K.T.*, 296 A.3d at 1105. Courts must also "discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* (citation omitted). However, "the parental bond is but one part of the overall subsection (b) analysis." *Id.* at 1113.

> The Section 2511(b) inquiry must also include consideration of other important factors such as: the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and

- 15 -

whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability.

*Id.* (footnote and citations omitted).

Pertinently, in the previous appeal, our Supreme Court faulted the orphans' court's initial analysis for failing to "explain the subsection (b) considerations of foster parent bond, preadoptive home, and need for permanency …." *Id.* at 1114. The Supreme Court explained:

> "[A]n emotional bond" with a parent is legally insufficient to preclude termination of parental rights without determining whether such bond is necessary and beneficial to the child and weighing the other factors present in the record. Likewise, an "adverse effect" or "detrimental impact" of severance alone cannot demonstrate a necessary and beneficial bond. In this case, we cannot discern whether the court considered the other factors present in this record[,] but we can conclude it conducted a legally erroneous parental bond analysis.

*Id.* at 1114-15 (footnote omitted).

Instantly, the orphans' court complied with the Supreme Court's remand order, and conducted a thorough Section 2511(b) analysis in its Rule 1925 opinion:

> Following additional review of the record, as difficult as it may be for this court to decide, the damage of granting [] termination [of Mother's parental rights] would not outweigh the damage of [C]hild not receiving the care and stability necessary for her "needs and welfare."
>
> ….
>
> In the case at hand, there is no doubt in this court's mind that Mother loves her child and that there is a bond between Mother and [C]hild. *See* N.T. Termination Hearing, 5/13/21, 84-88, 128. However, upon further review of Dr. Rosenblum's

- 16 -

testimony, in relying upon the mere existence of that bond, this court failed to recognize the damage being done by the prolonged, unhealthy aspects of the bond[,] as well as its adverse effect on [C]hild's ability to form attachments to [F]oster Mother[,] who can provide care and stability for [C]hild. *Id.* at 85-90, 93, 121, 126-30. As painful as it may be to break [C]hild's bond to her biological parent, even when there are aspects of that bond that are unhealthy, this court must weigh that injury against the damage that may cause if left intact. And in the case herein, it is likely that [Child will be] damage[d by] not receiving the care and stability necessary for her "needs and welfare."

….

Dr. Rosenblum testified that [C]hild receives "excellent, outstanding" care from [] Foster Mother and [Child's] primary attachment is [to] Foster Mother. N.T. Termination Hearing, 5/13/21, at 88, 90. [C]hild has developed healthy attachments to [] Foster Mother and foster siblings. *Id.* at 89. [] Foster Mother does a good job of building [C]hild's confidence and encouraging [C]hild. *Id.* at 87. Furthermore, the foster home "is the foundation of her emotional well-being." *Id.* at 13-14, 121.

….

Upon further review of the record, [C]hild is in a pre-adoptive home. *See* 3/22/2021, at 28. Furthermore, relying upon the mere existence of the bond between Mother and [C]hild, this court failed to recognize Mother's inability to correct her parenting[, which] is impeding [C]hild's permanent placement in the pre-adoptive home. *See* N.T. Termination Hearing, 5/13/21, at 10, 12, 20-21, 31-33, 85, 127-128.

…. The need for permanency is important, and the detrimental impact of the termination is nevertheless outweighed by the benefit of moving [C]hild to a permanent home.

Orphans' Court Opinion, 4/16/24, at 3-8.

The orphans' court's properly analyzed Child's best interest in accordance with the Supreme Court's directive. We agree with the reasoning and conclusion of the orphans' court, as it is supported by the record and free

of legal error. ***S.P.***, 74 A.3d 817, 826-27. Dr. Rosenblum testified that Child has developed "healthy attachments" to Foster Mother and two foster siblings, who she "considers [] her brother and sister." N.T., 5/13/21, at 89. Although Child "has an attachment to" Mother, "it is not her primary attachment. The person [Child] has lived with virtually her entire life[ ]is [F]oster [M]other[.]" ***Id.*** at 90. Dr. Rosenblum further opined that Mother is not

> in a position to assume a safe, secure … family environment for [Child] that would allow her to grow and develop in a healthy manner without risk of some form of psychological harm or concern to her well-being. The person who has guided [Child] in a very positive direction throughout her life has been [F]oster [M]other. [M]other's relationship, while [Child] loves [M]other, it is more like [] a big sister, an aunt. [Child] does not have a sense of connecting to [Mother] as a caregiver. And there is only one person who has served in that role or function, and that is [Foster Mother].

***Id.*** at 93.

Although Mother has made some progress toward her parenting goals, as we have previously observed, a "court cannot and will not subordinate indefinitely a child's need for permanence and stability to the parent's claim to progress and hope for the future." ***In re Adoption of R.J.S.***, 901 A.2d 502, 513 (Pa. Super. 2006). The record amply supports the orphans' court's conclusion that termination of Mother's parental rights best suits the needs and welfare of Child. The record confirms the orphans' court acted within its discretion when it credited Dr. Rosenblum's testimony regarding Child's bond with Foster Mother, and absence of a "caregiver" bond with Mother. ***See L.C.J.W.***, 311 A.3d at 48 ("It is the province of the orphans' court to assess

credibility and resolve any conflicts in the evidence, and in doing so it is free to believe all, part, or none of the evidence presented." (citation and quotation marks omitted)).  Accordingly, Mother is entitled no relief, and we affirm the order terminating Mother's parental rights.

Order affirmed.

P.J.E. Bender joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 08/16/2024