**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: Z.K.S. A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1147 WDA 2024 |

Appeal from the Order Entered August 14, 2024
In the Court of Common Pleas of Westmoreland County
Orphans' Court at No. 12 of 2024

| | | |
|---|---|---|
| IN RE:  ADOPTION OF:  D.A.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  T.A.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1148 WDA 2024 |

Appeal from the Order Entered August 14, 2024
In the Court of Common Pleas of Westmoreland County
Orphans' Court at No. 13 of 2024

| | | |
|---|---|---|
| IN RE:  ADOPTION OF:  R.S.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  T.A.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1149 WDA 2024 |

Appeal from the Order Entered August 14, 2024
In the Court of Common Pleas of Westmoreland County
Orphans' Court at No. 14 of 2024

| | | |
|---|---|---|
| IN RE: ADOPTION OF: D.G.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

|   |   |   |
|---|---|---|
|   | : |   |
|   | : |   |
|   | : |   |
| APPEAL OF: T.A.S., MOTHER | : |   |
|   | : |   |
|   | : |   |
|   | : |   |
|   | : | No. 1150 WDA 2024 |

Appeal from the Order Entered August 14, 2024
In the Court of Common Pleas of Westmoreland County
Orphans' Court at No. 15 of 2024

|   |   |   |
|---|---|---|
| IN RE: ADOPTION OF: J.D.L.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|   | : |   |
|   | : |   |
|   | : |   |
| APPEAL OF: T.A.S., MOTHER | : |   |
|   | : |   |
|   | : |   |
|   | : |   |
|   | : |   |
|   | : | No. 1151 WDA 2024 |

Appeal from the Order Entered August 14, 2024
In the Court of Common Pleas of Westmoreland County
Orphans' Court at No. 16 of 2024

BEFORE: PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: April 15, 2025**

In these consolidated appeals,[1] T.S., a/k/a T.A.S. (Mother), appeals from the orders granting the petitions filed by the Westmoreland County Children's Bureau (WCCB), and terminating her parental rights to five children: Z.K.S. (born Oct. 2013); D.A.S. (born Oct. 2014); D.G.S. (born Feb.

---

[1] This Court consolidated the appeals *sua sponte* on November 25, 2024.

2018); J.D.L.S. (born Nov. 2019); and R.S.S. (born Jan. 2022) (collectively, Children).[2]  We affirm.

*CASE HISTORY*

The orphans' court recounted the factual and procedural history as follows:

> [T]his case began with the WCCB seeking emergency custody of all five … children on July 28, 2022[,] … citing … circumstances [which] demonstrated that Mother and Father's home was not safe and appropriate for [C]hildren.  First and foremost, … Z.K.S. was identified as the victim child on an indicated report on a child protective services (CPS) referral from Armstrong County in 2014, after which Mother and Father declined to participate in any recommended services.  Additionally, there was a subsequent indicated status on a CPS referral in Westmoreland County on May 17, 2022.  In that instance, [Mother and Father] failed to supervise [C]hildren and allowed … D.G.S. to ingest "gummies" containing adult dosages of CBD.  The [WCCB] had further concerns regarding [Mother and Father's] housing situation.  Lastly, a CPS referral [was] received by the [WCCB after] the youngest child[,] R.S.S.[,] was being pushed in a stroller along a set of train tracks by her older sibling[,] J.D.L.S.[,] as an oncoming train approached.  [Mother and Father] were indicated on this report as well, which was upheld on appeal to the Pennsylvania Department of Human Services Bureau of Hearings and Appeals (BHA).  Th[e juvenile c]ourt granted the [WCCB's] application for shelter care and scheduled an adjudication hearing.
>
> Following [a] hearing on August 26, 2022, this [c]ourt found all five children were without proper parental care and control.  This [c]ourt also found aggravated circumstances existed as to both Mother and Father, as they had each seen their respective parental rights terminated involuntarily to a child in the past.  Mother and Father appealed this decision to the Pennsylvania Superior Court and, after this [c]ourt's decision was upheld, sought relief from the Pennsylvania Supreme Court.  The

---

[2] The orphans' court also terminated the parental rights of Children's father, C.W.S. (Father).

Pennsylvania Supreme Court declined to hear the matter, and the cases were remanded to … Westmoreland County.

The [c]ourt ordered Mother … to participate in a number of services … including: psychiatric evaluations … and compliance with any recommended mental health treatment and medication management plans; random drug screens…; parenting assessments, including the completion of the Child Abuse Potential Inventory, and parenting instruction…; obtaining and maintaining stable and secure housing, [and] obtaining and maintaining a legal and verifiable source of income….

On two separate occasions, Mother and Father filed motions to have the dependency matter transferred to Armstrong County, Pennsylvania. Following hearings in both instances, it was found that the[y] were not able to establish they were residents of Armstrong County; instead, the evidence showed the[y] had been evicted or asked to leave several temporary residences between both Westmoreland and Armstrong Counties during the course of the case. Services were put in place with Justice Works Youth Care to try to address the housing situation, but even when [Mother and Father] were able to secure their own housing, issues would arise regarding cleanliness that would make the environment unsafe for a child.

[Mother and Father] regularly appeared at [p]ermanency [r]eview [h]earings and, according to the [o]rders entered, had moderately been in compliance with th[e c]ourt's ordered service plan; however, at no time during the dependency case were the[y] found to have made more than minimal progress toward alleviating the concerns that caused [C]hildren to be placed. More than two years after [the court adjudicated Children dependent], testimony from various witnesses indicated that Mother and Father were still not in a position to parent [C]hildren outside of supervised visitation, although they had completed the curriculum portions of parenting services, such as Triple P Parenting and Parentwise. The application of the skills taught in those programs has not been demonstrated consistently…. Caseworker Amber Wannamaker testified that … as of the date of her testimony on May 23, 2024, the same housing, parenting, and mental health concerns exist[ed]. While Mother and Father had participated in some services throughout the life of the case, their participation increased after [WCCB] filed for termination. For instance, Mother underwent a psychiatric evaluation, which has been recommended since August 2022, on February 20, 2024, nearly one month after

the [WCCB] filed for termination. Additionally, Mother … began participating more regularly in random drug screens following the filing for termination.

Orphans' Court Opinion (OCO), 10/15/24, at 3-6.

The WCCB petitioned to terminate Mother's parental rights to Children on January 25, 2024. The orphans' court held hearings on May 23 and July 9, 2024. On August 14, 2024, the orphans' court entered the orders terminating Mother's parental rights to each of the Children pursuant to 23 Pa.C.S. § 2511(a)(2), (8) and (b). Mother filed notices of appeal along with concise statements of errors pursuant to Pa.R.A.P. 1925(a)(2)(i).

Mother presents the following issue for review:

> Whether the [orphans'] court erred in finding by clear and convincing evidence that the [WCCB] met its burden under 23 Pa.C.S. § 2511(b)?

Mother's Brief at 4.

### DISCUSSION

In reviewing Mother's issue, we are limited to determining whether termination "is supported by competent evidence, and whether the [orphans'] court gave adequate consideration to the effect of [termination] on the welfare of the child." ***In re Adoption of C.P.D.***, 324 A.3d 11, 24 (Pa. Super. 2024) (citations omitted). Appellate courts must accept the factual findings and credibility determinations of the orphans' court. ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). Our Supreme Court explained:

> If the factual findings are supported, appellate courts review to determine if the [orphans'] court made an error of law or abused its discretion. A decision may be reversed for an abuse of

discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The [orphans'] court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized an appellate court's deference to [orphans'] courts that often have first-hand observations of the parties spanning multiple hearings.

*Id.* The orphans' court "is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

Under the Adoption Act, the orphans' court must first determine whether the petitioner has established grounds for termination under 23 Pa.C.S. § 2511(a). If the court finds grounds for termination under Section 2511(a), it must consider the child's needs and welfare pursuant to Section 2511(b). This Court need only agree with the orphans' court as to "any one subsection of [Section] 2511(a), in addition to [Section] 2511(b), in order to affirm the termination of parental rights." *Int. of K.T.*, 324 A.3d 49, 57 (Pa. Super. 2024) (citation omitted).

Here, the orphans' court found grounds for termination under Section 2511(a)(2), which provides for termination when:

The repeated and continued incapacity … of the parent has caused the child to be without essential parental care, control or subsistence necessary for his [or her] physical or mental well-being and the conditions and causes of the incapacity, … cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

Dr. Richelle O'Malley, an expert in parenting assessments, testified to conducting an "interactional evaluation" with Mother, Father and Children. N.T., 5/23/24, at 51. Dr. O'Malley recommended that Mother participate in services "specifically related to what brought [C]hildren into care." *Id.* at 84. The orphans' court referenced Dr. O'Malley's testimony in explaining:

> As … is evident from the abundance of evidence produced by the WCCB, the issues that caused [C]hildren to be placed remain unaddressed to this day. Mother has never actively engaged in mental health treatment to demonstrate to this [c]ourt that she will be an appropriate parent to [C]hildren. During her [parenting] assessment with Dr. O'Malley, Mother disclosed a number of mental health issues, but no evidence has ever been produced to show that she is in active treatment for mental health. As a result of her indicated status being upheld on appeal to the BHA, Mother was also ordered to under[go] offender's treatment, which she had steadfastly refused.
>
> … In addition to the fact that several of the witnesses on behalf of the [WCCB] feel that Mother has not remedied the circumstances[,] creating a lack of parental care and control during this case, it is also noteworthy that Mother has been involved in the child welfare system as a parent of dependent children since 2006. Further, Mother has seen her parental rights terminated to several other children in the past and had one other dependency matter over which this [c]ourt presided concluded via a subsidized permanent legal custodianship. If these same mental health, housing and parenting issues have endured for more than a decade, this [c]ourt finds that they are not likely to be remedied in a timely manner.

OCO at 7. As the record supports termination under Section 2511(a), we consider Mother's issue regarding Children's needs and welfare pursuant to Section 2511(b).

Section 2511(b) requires the orphans' court to "give primary consideration to the developmental, physical and emotional needs and welfare

of the child." 23 Pa.C.S. § 2511(b). "Notably, courts should consider the matter from the child's perspective, placing [the child's] developmental, physical, and emotional needs and welfare above concerns for the parent." *Int. of C.S.*, 327 A.3d 222, 239 (Pa. Super. 2024) (citation omitted).

Mother argues that the WCCB failed to meet "its burden regarding [Section] 2511(b) because it is not clear whether there continues to be a bond between Mother and Children." Mother's Brief at 8. Mother claims that "[w]ithout providing evidence as to … whether termination would sever a necessary and beneficial relationship to [C]hildren, the [WCCB] has not met its burden." *Id.* at 12. Mother states:

> In the instant case, testimony of a bond existing between Mother and [C]hildren w[as] given by numerous service providers. Due to this testimony of a bond existing, the [orphans'] court needed to decide … whether severing that bond would cause [C]hild[ren] to suffer. In its opinion, the [orphans'] court focused on [C]hildren … doing well and thriving in their current foster care, but failed to analyze the effect of severing their bond with [Mother].

*Id.* at 11 (citing OCO at 8). Mother submits that her parental rights should not have been terminated, and "the matter should be remanded for additional testimony regarding whether a bond exists." *Id.* at 8.

The WCCB disagrees.[3] The WCCB states that the orphans' court "ruled that, although [Mother] clearly loves her Children, and they appear to enjoy

---

[3] Children's counsel advised that he would not be filing a brief, but "believes the [orphans' c]ourt through its [OCO] and the [WCCB] have accurately and adequately framed the legal issues and factual positions in this matter."
*(Footnote Continued Next Page)*

spending time with her during supervised visits, there were times when the Children asked to leave the visits and return to their [f]oster [p]arents and had behavioral issues before and after visits." WCCB's Brief at 8. In addition:

> While there may be a bond between [Mother] and Children, although specified as an insecure bond, the need for stability, safety and permanency is more important than any bond between a parent and a child. Various witnesses testified that although [C]hildren have a bond with [M]other, it doesn't appear to be a healthy and safe bond but more of a trauma bond, and it is in the best interest of [C]hildren to allow them to continue to heal properly in their respective foster homes where they feel safe and have their needs met.

*Id.* at 5-6.

Our review reveals that the orphans' court properly considered the bond between Mother and Children consistent with the record and applicable law. Pertinently:

> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, **Section 2511(b) does not require a formal bonding evaluation.**

*In re Adoption of C.P.D.*, 324 A.3d at 26–27 (citation omitted, emphasis added).

Moreover, "analysis of the parental bond is but one part of the overall [S]ection [2511](b) analysis, which includes a determination of whether the bond is necessary and beneficial to the child, *i.e.*, whether maintaining the

---

Letter, 1/9/25. Counsel stated that "[f]rom the point of view of the best interest of [C]hildren[,] they are all in a safe and appropriate placement." *Id.*

bond serves the child's developmental, physical, and emotional needs and welfare." ***Interest of K.T.***, 296 A.3d 1085, 1113 (Pa. 2023). The Pennsylvania Supreme Court has instructed:

> The Section 2511(b) inquiry must also include consideration of other important factors such as: the child's need for permanency and length of time in foster care consistent with 42 Pa.C.S. § 6351(f)(9) and federal law ASFA, 42 U.S.C. §§ 675(5)(C), (E); whether the child is in a pre-adoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability.

***Id.*** "These factors and others properly guide the court's analysis of the child's welfare and all [his or] her developmental, physical, and emotional needs." ***Id.*** Courts "have the discretion to place appropriate weight on each factor present in the record before making a decision regarding termination that best serves the child's specific needs." ***Id.***

Mother concedes that "a formal bonding assessment is not mandated." Mother's Brief at 12; ***In re Adoption of C.P.D.***, ***supra***. Mother also fails to support her argument with citation to notes of testimony. ***See*** Pa.R.A.P. 2119(c) (stating that "the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears"). To the contrary, WCCB supports its argument with citations to testimony from Children's therapist, Dr. Christine Mahady; expert psychologist, Dr. Neil Rosenblum; and the WCCB caseworker, Amber Wannamaker. OCY's Brief at 6-8.

As Children's therapist, Dr. Mahady did not perform a bonding analysis, although she "looked at … family dynamics." N.T., 7/9/24, at 120. Ms. Mahady described the impact of past trauma on Children. Mother's counsel asked Dr. Mahady:

> Q. [W]hen [Children] bring up past traumatic incidents, do they say *mom* directly or *dad* directly? Is it just the parents?
>
> A. They say mom, dad.

*Id.* at 158 (emphasis in original). Dr. Mahady stated her "opinion that [C]hildren need permanency." *Id.* at 168. She explained that Children "need a parent who is going to consistently meet their needs, not be neglectful." *Id.* at 166.

Dr. Rosenblum testified to conducting mental health evaluations of Children. Dr. Rosenblum stated that he planned to "conduct[] a bonding assessment [with Mother, but she] refused." N.T., 5/23/24, at 37.[4] Thus, Dr. Rosenblum was limited in evaluating "the effect of severing the bond." *Id.* at 46. Dr. Rosenblum stated:

> [I]n my experience, in terms of what happens to children, there is always going to be a balance. There's always some degree of loss that children will feel, … I have seen many, many cases of this nature. As I said, there's going to be some loss, but, also, I believe, some sense of safety and protection.

---

[4] Dr. Rosenblum explained that he scheduled "interactional evaluations/bonding studies" with Mother and Father. *Id.* at 8. However, after agreeing to the evaluations, "they changed their minds, [and] declined to participate." *Id.* at 8-9.

*Id.* at 46-47. Ms. Wannamaker, the WCCB caseworker, confirmed that Mother was "not going to do the evaluation with Dr. Rosenblum." *Id.* at 197.

The orphans' court referenced the above witnesses, as well as others, in considering Children's needs and welfare. The court stated:

> Testimony from a number of witnesses, including Dr. Neil Rosenblum, Caseworker Amber Wannamaker, CASA volunteer Kathleen Baker, and Dr. Christine Mahady, all indicated that [C]hildren are doing very well in their respective placements. In fact, Dr. Rosenblum noted that D.A.S. described a "totally different world" when comparing life in foster care to life with [Mother]. Dr. Rosenblum noted that both D.A.S. and Z.K.S. exhibit signs of mental health disorders and recommended participation in trauma therapy. All of the [C]hildren are up to date medically and are thriving in their respective placements.

OCO at 8. The court specifically found that the WCCB "prove[d] by clear and convincing evidence that the best interest of [C]hildren would be to terminate the bond they have with Mother [and] proceed with adoption by their respective foster families." *Id.* at 9.

The orphans' court properly considered Children's bond with Mother in analyzing Children's needs and welfare. Therefore, the court did not err or abuse its discretion in terminating Mother's parental rights under Section 2511(b).

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 04/15/2025