J-S30005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.M., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1301 EDA 2025 |

Appeal from the Decree Entered May 27, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000109-2025

BEFORE: OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY OLSON, J.: **FILED NOVEMBER 14, 2025**

Appellant, D.M. (Father), appeals from the decree entered on May 27, 2025, involuntarily terminating his parental rights to D.M. (a male born in March, 2023) (Child) and changing the goal to adoption pursuant to 23 Pa.C.S.A. § 2511. In this direct appeal, Appellant's counsel has filed both a petition for leave to withdraw as counsel and an accompanying brief pursuant to **Anders v. California**, 386 U.S. 738 (1967) and **Commonwealth v. Santiago,** 978 A.2d 349 (Pa. 2009). We conclude that Appellant's counsel has complied with the procedural requirements necessary to withdraw. Moreover, after independent review of the record, we conclude that the instant appeal is wholly frivolous. Therefore, we grant counsel's petition for leave to withdraw and affirm the decree.

_____

[*] Retired Senior Judge assigned to the Superior Court.

We briefly summarize the facts and procedural history of this case as follows. Child was born with benzodiazepine and fentanyl in his bloodstream. As a result, on the day following Child's birth, the Philadelphia Department of Human Services (DHS) received a general protective service report alleging that Child had tested positive for the aforementioned drugs. Child's mother thereafter committed suicide on April 9, 2023. A shelter care hearing commenced on April 12, 2023, wherein evidence was presented that Child should remain in his foster care placement. At an adjudicatory hearing on May 11, 2023, Father requested a paternity test. On August 15, 2023, the trial court held another hearing wherein the paternity results confirmed that Father is Child's biological father. At that hearing, Father agreed to adjudicate Child dependent based upon Father's inability to care for him at that time. DHS was granted custody and Child remained in foster care. The trial court ordered supervised visitation, parenting classes, an assessment of Father's home, and Father's attendance at Child's medical appointments. Father failed to appear for permanency review hearings on November 16, 2023, and December 4, 2023. Maternal grandmother and a maternal cousin filed a motion to intervene. On March 6, 2024, the trial court held a permanency review hearing wherein Father attended. The trial court determined that Father failed to complete any of his objectives and had not maintained any contact with Child. The trial court ordered Child to remain in foster care and reduced Father's supervised visitation to once weekly. On June 5, 2024, Father failed to appear for another permanency review hearing. On July 22,

2024, Father participated in a permanency review hearing *via* telephone. The trial court again determined that Father failed to complete any of his objectives and had not maintained any contact with Child. Maternal grandmother testified that Father had several other children in foster care, was already struggling to care for a teenaged son, and was not ready to reunite with Child. The trial court ordered Father to complete the prior objectives, continue once weekly supervised visitation with Child, and participate in three, random narcotics tests. Father failed to appear for the next four scheduled permanency review hearings held on September 16, 2024, November 6, 2024, February 3, 2025, and March 31, 2025. At the February 3, 2025 hearing, the trial court changed Child's goal from reunification to adoption. On May 27, 2025, Father was present, and represented by counsel, for a termination of parental rights hearing. After hearing testimony, the trial court entered a decree, on the same day, involuntarily terminating Father's parental rights to Child, with the goal of adoption, under 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), and (8) and 2511(b). Father filed a timely notice of appeal on May 27, 2025.

On appeal, Appellant's counsel filed a petition for leave to withdraw and counsel accompanied this petition with an *Anders* brief. Before reviewing the merits of this appeal, we first determine whether counsel has fulfilled the necessary procedural requirements to withdraw as counsel. *Commonwealth v. Miller*, 715 A.2d 1203, 1207 (Pa. Super. 1998).

To withdraw under **Anders**, counsel must satisfy certain technical requirements. First, counsel must "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous." **Miller**, 715 A.2d at 1207. Second, counsel must file an **Anders** brief, in which counsel:

> (1) provide[s] a summary of the procedural history and facts, with citations to the record; (2) refer[s] to anything in the record that counsel believes arguably supports the appeal; (3) set[s] forth counsel's conclusion that the appeal is frivolous; and (4) state[s] counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361. Finally, counsel must furnish a copy of the **Anders** brief to his or her client and advise the client "of [the client's] right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention." **Commonwealth v. Woods**, 939 A.2d 896, 898 (Pa. Super. 2007) (citation omitted).

If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." **Santiago**, 978 A.2d at 355 n.5; **see also Commonwealth v. Yorgey**, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*) (holding that the **Anders** procedure requires this Court to review "the entire record with consideration first of the issues raised by counsel .... [T]his review does not require this Court to act as counsel or otherwise advocate on

- 4 -

behalf of a party. Rather, it requires us only to conduct a review of the record to ascertain if[,] on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated. We need not analyze those issues of arguable merit; just identify them, deny the motion to withdraw, and order counsel to analyze them[.]"). It is only when all of the procedural and substantive requirements are satisfied that counsel will be permitted to withdraw.

Here, counsel complied with all of the above procedural obligations.[1] We must, therefore, review the entire record and analyze whether this appeal is, in fact, wholly frivolous. Our analysis begins with the issues raised in the *Anders* brief, which are as follows:

> A. Whether DHS failed to prove by clear[] and convincing evidence that [F]ather's parental rights should have been terminated pursuant to 23 Pa.C.S.[A.] § 2511(a)(1), (2), (5) and (8) since he had substantially completed his objectives as required?

> B. Whether [t]here was a strong emotional and parental bond between [Father] and [Child] which would have had a negative effect on [C]hild if the parental bond was permanently severed pursuant to 23 Pa.C.S.[A.] § 2511(b)?

*Anders* Brief at 5.

Father alleges that there was no clear and convincing evidence that his parental rights should have been involuntarily terminated. He claims that he moved to Bucks County and has adequate housing for Child, and that he completed an on-line parenting class. *Id.* at 7. Father claims that he

_____

[1] Furthermore, Appellant has not responded to counsel's petition to withdraw.

- 5 -

"receives disability" payments due to injury, "works odd jobs to supplement his income" and "could not find a convenient time to visit" Child. ***Id.*** Father further asserts that he did not attend in-person parenting classes because of a lack of transportation, however, he also concedes that he owned two cars and has a valid driver's license. ***Id.***

This Court has held:

We review the termination of parental rights for an abuse of discretion. This standard of review requires appellate courts to

accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

[T]here are clear reasons for applying an abuse of discretion standard of review. Unlike trial courts, appellate courts are not equipped to make fact-specific determinations on a cold record, where trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead, we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue. Finally, this Court need only agree with the orphans' court as to any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm the termination of parental rights.

*Interest of K.T.*, 324 A.3d 49, 56–57 (Pa. Super. 2024) (internal citations, quotations, ellipse, and original brackets omitted).

Here, the petition for the involuntary termination relied upon Section 2511(a)(1), (2), (5), and (8) which provide as follows:

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and

- 7 -

causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8).

We will focus on Section 2511(a)(2), wherein a petitioner must prove by clear and convincing evidence:

(1) repeated and continued incapacity, abuse, neglect or refusal;
(2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and
(3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*Interest of K.T.*, 324 A.3d at 57 (citation omitted).

In this case, the trial court first noted that DHS presented the testimony of two case managers who were assigned to oversee Child's case. Trial Court

Opinion, 6/30/2025, at 9-10. Both testified that Father never visited Child; one of the case managers testified that "to the best of her knowledge, [F]ather had never seen [C]hild." *Id.* Father never completed any of the trial court's objectives for reunification, including participating in parenting classes or drug screenings as ordered. *Id.* Additionally, Father "admitted to not completing … his case plan objectives" and "admitted to never visiting [Child]." *Id.* at 10. Instead, Father testified that visits were inconvenient because he was "a very busy man." *Id.* As such, the trial court determined:

> The record and testimony presented at the parental rights termination hearing demonstrated [F]ather's inability to provide care and comfort to [Child]. [Father's] failure to remedy the conditions that brought [C]hild into care indicated a continuing disregard for his parental duties. Specifically, [F]ather failed to perform one single objective in his case plan or follow a single objective ordered by [the trial] court.

*Id.* at 8. Accordingly, the trial court ultimately found that

> [t]he evidence presented … made it clear to this court that [F]ather [willfully] failed to perform every single objective he was ordered to complete. The overall lack of effort exhibited by [F]ather was exceptionally astonishing, but most alarming was that [F]ather has still not met [C]hild after almost two and a half years. [Father's] most impressive effort was that he appeared at six of fourteen court hearings. By his own admission, he was too pre-occupied to visit even once.

*Id.* at 11.

Upon review of the certified record, applicable law, and the trial court's opinion, we conclude that there was no abuse of discretion or error of law and that the trial court's determination was supported by clear and convincing

- 9 -

evidence. Termination of Father's parental rights was warranted under Section 2511(a)(2). As such, Father's first issue is frivolous.

Next, this Court has stated:

When the orphans' court finds grounds for termination under Section 2511(a), it must separately consider a child's needs and welfare:

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b).

Notably, courts should consider the matter from the child's perspective, placing [their] developmental, physical, and emotional needs and welfare above concerns for the parent. Courts must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. However, the parental bond is but one part of the overall subsection (b) analysis.

The Section 2511(b) inquiry must also include consideration of other important factors such as: the child's need for permanency and length of time in foster care ...; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability.

*Interest of K.T.*, 324 A.3d at 59 (internal case citations and quotations omitted; brackets in original).

Here, Child's case managers testified that there was no possible parental bond between Father and Child because Child does not know Father at all.

- 10 -

Trial Court Opinion, 6/30/2025, at 9-10. Both testified that Child would not even recognize Father. *Id.* As such, both case managers testified that there would be no irreparable harm to Child if Father's rights were terminated. *Id.* Accordingly, the trial court found:

> As a result of a lack of visitation, [C]hild does not know his father. Because [C]hild does not know his father, a bond could not be built between them. Because no bond was built with [F]ather, [C]hild would suffer no harm if [Father's] parental rights were terminated.
>
> Conversely, [the trial] court heard highly credible testimony [from both case managers] that a strong bond has been formed between [foster mother and Child]. The [foster] parent has cared for [Child] practically all his life. [Child] calls her "Mom" and would suffer irreparable harm if the two were separated.

*Id.* at 11.

Upon review, we discern no abuse of discretion or error of law in terminating Father's parental rights pursuant to Section 2511(b). Father has no bond with Child and termination would not cause Child irreparable harm. Moreover, Child has been in foster care for his entire life, and he has bonded with his foster parent, with whom he has shared a pre-adoptive home. Child's foster mother also continues to meet Child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability. Therefore, based upon all of the foregoing, Father's second issue is also frivolous.

Accordingly, we have independently considered the issues raised within counsel's *Anders* brief and we have determined that those claims are

- 11 -

frivolous. In addition, after independent review of the entire record, we see nothing that might arguably support this appeal. The appeal is, therefore, wholly frivolous. Hence, we affirm the trial court's decree and grant counsel's petition for leave to withdraw.

Petition for leave to withdraw granted. Decree affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/14/2025